[No. 84894-7.   En Banc.]
Argued November 10, 2011.   Decided March 8, 2012.

Scott E. Stafne, *Respondent*, v. Snohomish County et al.,
*Petitioners*.

*Scott E. Stafne*, pro se.

*Mark K. Roe, Prosecuting Attorney*, and *Bree Urban* and *John R. Moffat, Deputies*, for petitioners.

*Michael B. King* (of *Carney Badley Spellman PS*), for respondent.

*Timothy J. Donaldson* and *J. Preston Frederickson* on behalf of Washington State Association of Municipal Attorneys, amicus curiae.

*Darren E. Carnell* and *Jennifer M. Stacy* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

¶1 C. JOHNSON, J. — This case involves whether a landowner seeking review of a county's decision not to adopt a proposed comprehensive plan amendment must appeal to the growth management hearings board (growth board) before seeking a remedy in superior court. This case also involves whether a party is entitled to a constitutional writ of certiorari or declaratory relief under the circumstances of this case.

¶2 The superior court granted Snohomish County's motion to dismiss Scott Stafne's land use petition and complaint. The Court of Appeals held that based on its conclusion that appeal to the growth board would be futile, the complaint was properly filed in superior court under the Land Use Petition Act (LUPA), chapter 36.70C RCW, but affirmed the dismissal on other grounds. Both parties were granted review. We affirm, but hold that decisions related to amendment of comprehensive plans must be appealed to the growth board under the procedures provided for in the Growth Management Act (GMA), chapter 36.70A RCW, and failure to do so precludes superior court review. We also hold that a constitutional writ and declaratory relief are unavailable under the circumstances of this case.

## FACTS

¶3 Scott Stafne, the petitioner and attorney acting pro se throughout most of these proceedings, owns a 20-acre lot in Twin Falls Estates, an area currently designated under Snohomish County's comprehensive plan as low density rural residential. Stafne bought a section of land adjacent to his property from the Department of Natural Resources (DNR) that was designated under the plan as commercial

forest land (CFL) and forest transition area (FTA), which is at issue in this case.

¶4 Stafne sought and had been granted a boundary line adjustment allowing him to incorporate the newly acquired land onto his existing lot, though the acquired land retained its CFL and FTA status. In October 2007, Stafne submitted a docket proposal to the Snohomish County Council (Council) requesting the Council legislatively amend the county's comprehensive plan to redesignate the CFL and FTA portions of his property to low density rural residential. Stafne has generally maintained that his acquired land should be redesignated because the land, which is characterized by streams, wetlands, and very steep slopes, could not be considered "forest land" under the GMA.[1] Snohomish County considers such docket proposals annually. Snohomish County Code (SCC) 30.74.015; RCW 36.70A.130(2)(a).

¶5 Stafne addressed the Council at the June 9, 2008, public hearing, arguing that under the statute, his acquired land should not be designated forest land, and requested that the comprehensive plan be amended. He pointed out that the land had been acquired from DNR because DNR had determined the land was not appropriate for commercial logging. Stafne also argued the county's planning department, which conducts the initial review and evaluation of docket proposals pursuant to SCC 30.74.030, erroneously relied on a previous definition of "forest land" when evaluating his proposal. On June 16, the Council adopted "Amended Motion No. 08-238," approving the final list of proposals it decided to consider. The Council decided not to place Stafne's proposal on the final docket. Stafne did not appeal the Council's decision not to adopt his proposed amendment to the growth board.

---

[1] RCW 36.70A.030(8), in relevant part, defines " '[f]orest land' " as "land primarily devoted to growing trees for long-term commercial timber production on land that can be economically and practically managed for such production."

¶6 Instead, on July 18, 2008, Stafne filed a complaint and a land use petition in superior court. He later amended his complaint to include requests for a statutory writ of review, a writ of mandamus, a writ of prohibition, or a constitutional writ of certiorari. He also sought a declaratory judgment that the land he acquired from DNR did not meet the definition of "forest land" under the GMA and, thus, could not be designated CFL as a matter of law.

¶7 The County moved to dismiss Stafne's lawsuit (1) under Civil Rule (CR) 12(b)(6), arguing that the decision to amend a comprehensive plan is a legislative act and the courts have no power to grant legislative relief, and (2) under CR 12(b)(1), arguing that petitions alleging GMA noncompliance must be appealed to the growth board before the superior court can have subject matter jurisdiction. Stafne filed a cross motion for partial summary judgment on his declaratory judgment action. The superior court granted the County's motion to dismiss and denied Stafne's motion.

¶8 Stafne appealed. The Court of Appeals affirmed but held that Stafne was not required to exhaust administrative remedies by seeking review at the growth board because such review would be futile and, as a result, LUPA was his exclusive means to obtain review in superior court. Nevertheless, the court held that Stafne's land use petition was untimely and affirmed the trial court. Further, the court held that the trial court did not err in denying Stafne's request for writ of mandamus or prohibition and that Stafne was not entitled to declaratory judgment on summary judgment because LUPA was an adequate alternative remedy. *Stafne v. Snohomish County*, 156 Wn. App. 667, 234 P.3d 225 (2010).

¶9 Both parties sought this court's review. Both petitions were granted under limited review. *Stafne v. Snohomish County*, 171 Wn.2d 1008, 249 P.3d 183 (2011).

## ISSUES

¶10 1. Whether a jurisdiction's decision related to a comprehensive plan amendment must be appealed to the growth board under the GMA or whether relief can be sought in superior court under LUPA.

¶11 2. Whether a superior court has jurisdiction to review such decisions under its constitutional writ authority.

¶12 3. Whether Stafne is entitled to declaratory judgment as to the legal consequences of the County's boundary line adjustment, specifically the CFL and FTA designation of the incorporated land.

## ANALYSIS

¶13 As mentioned, we granted both parties' petitions for review. We begin our analysis with the issues raised by the County because if we agree with the County, Stafne's arguments will necessarily fail. Though the County agrees with the result the Court of Appeals ultimately reached, it generally disagrees with two sections of the court's analysis. First, the County disagrees with the court's conclusion that a legislative decision not to adopt a proposed comprehensive plan amendment can qualify as a "land use decision" appealable under LUPA. The County contends that this conclusion disregards the express statutory provisions and conflicts with the Court of Appeals, Division Three's decision in *Coffey v. City of Walla Walla*, 145 Wn. App. 435, 187 P.3d 272 (2008), which held that a superior court has no jurisdiction to review comprehensive plan decisions under LUPA. Second, the County disagrees with the court's discussion of the growth board's jurisdiction and conclusion that Stafne was excused from appealing to the growth

board because review there would have been futile.[2] The County argues that this conclusion is in tension with our decision in *Torrance v. King County*, 136 Wn.2d 783, 966 P.2d 891 (1998), where we held that decisions related to comprehensive plans must be appealed to the growth board first pursuant to the procedures in the GMA.

¶14 At the outset, it is crucial to recognize that the GMA and LUPA are separate and distinct statutory schemes, with each containing expressly different review procedures. Generally, under the GMA, counties and cities required or choosing to plan under the act must each maintain a comprehensive plan, a generalized coordinated land use policy statement. RCW 36.70A.030(4). The comprehensive plan must include maps and "descriptive text covering objectives, principles, and standards used to develop the comprehensive plan." RCW 36.70A.070. These maps can include a future land use map depicting how property is designated in the jurisdiction; the designations guide how property may thereafter be zoned by the jurisdiction.

¶15 Comprehensive plans are subject to continuing review and evaluation. Plans are amended by legislative action according to the schedules provided in RCW 36.70A-.130. As part of this review process, counties and cities are required to establish procedures for the public to annually suggest updates, proposed amendments, and revisions to the jurisdiction's comprehensive plan. RCW 36.70A.470(2). To comply, Snohomish County adopted the procedure codified in chapter 30.74 of the SCC. The participation program is known as "docketing." To ensure the cumulative effect of all the docket proposals is ascertained, the Council must consider all proposed amendments in a single public hearing. RCW 36.70A.130(2)(b). Following the hearing, the Council determines which proposals, if any, will be added to the final docket for comprehensive plan amendments.

[2] The Washington Association of Prosecuting Attorneys and Washington State Association of Municipal Attorneys each filed amicus curiae briefs in support of the County's position.

Amendments are adopted by resolution or ordinance. RCW 36.70A.130(1)(b). This case involves the Council's decision not to adopt Stafne's proposed amendment.

¶16 The legislature established in the GMA an administrative appeal process to resolve GMA noncompliance allegations, including that a local government's comprehensive plan is noncompliant. Under the GMA, such allegations must be filed with the growth board first. RCW 36.70A.250-.345. Unless otherwise specified in the GMA, the Washington Administrative Procedure Act (APA) chapter 34.05 RCW, governs the practice and procedure of the board. RCW 36.70A.270(7). Under the GMA, the board considers petitions alleging, among other things, that a local government's plans, regulations, or amendments do not comply with the act. RCW 36.70A.280(1)(a). The board has interpreted its statutory authority, at a minimum, as extending to review of comprehensive plans and amendments adopted by state or local governments. However, the board has held that it "lacks jurisdiction" to review decisions *not to adopt* proposed amendments. *See SR 9/US 2 LLC v. Snohomish County*, No. 08-3-0004, at 4, 2009 GMHB LEXIS 26, at *8 (Cent. Puget Sound Growth Mgmt. Hr'gs Bd. Apr. 9, 2009); *Chimacum Heights LLC v. Jefferson County*, No. 09-2-0007, at 3, 2009 GMHB LEXIS 48, at *3 (W. Wash. Growth Mgmt. Hr'gs Bd. May 20, 2009); *Cole v. Pierce County*, No. 96-3--0009c, at 9-10, 1996 GMHB LEXIS 389, at *25 (Cent. Puget Sound Growth Mgmt. Hr'gs Bd. July 31, 1996).

¶17 On the other hand, under LUPA, the superior court is granted exclusive jurisdiction to review government actions meeting the definition of a "land use decision" under RCW 36.70C.020(2)(a).[3] The definition includes decisions on applications for a "project permit." In turn, a project

---

[3] RCW 36.70C.020(2) defines a " '[l]and use decision' " as "a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals, on:

"(a) An application for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used, but excluding applications for permits or approvals to use, vacate,

permit is defined by RCW 36.70B.020(4), which we have recognized applies to LUPA. *Woods v. Kittitas County*, 162 Wn.2d 597, 610, 174 P.3d 25 (2007). Significant to the argument in this case, the definition for a "project permit" expressly *excludes* the adoption or amendment of a comprehensive plan. Further, among the types of applications excluded from a "land use decision" under RCW 36.70C-.020(2)(a) are applications for legislative approvals. Amending a comprehensive plan is a legislative act. RCW 36.70A-.130(1). Thus, when a citizen submits a docket proposal for a comprehensive plan amendment, he or she is seeking legislative approval, not a land use decision as defined under LUPA.

¶18 In *Coffey*, Division Three recognized the distinction between decisions falling under the GMA and LUPA. There, Walla Walla's city council passed an ordinance adopting a comprehensive plan amendment pertaining to land 50 acres in size. Property owners of neighboring land challenged the amendment by filing a land use petition in superior court. The superior court dismissed the petition because the petitioners had not established that the city council acted in an arbitrary or capricious manner in adopting the ordinance. On appeal, Division Three affirmed the dismissal, but on different grounds. The court explained that comprehensive plan amendments were excluded from decisions reviewable under LUPA and that under RCW 36.70A.280 and .290, anyone seeking to challenge an amendment to a comprehensive plan was required to appeal that decision to the growth board, the agency with jurisdiction over such legislative decisions. Thus, the court concluded that the petitioners should have appealed to the growth board and held because of this the superior court lacked jurisdiction to consider a comprehensive plan amendment under LUPA. *Coffey*, 145 Wn. App. at 442.

---

or transfer streets, parks, and similar types of public property; excluding applications for legislative approvals such as area-wide rezones and annexations; and excluding applications for business licenses."

¶19 Yet contrary to the GMA, LUPA, and *Coffey*, the Court of Appeals in this case permitted Stafne to bypass the growth board and held that Stafne's avenue for relief was in superior court under LUPA. By reaching this conclusion, the court confused the concept of a legislative amendment changing the designation of land in a comprehensive plan with a quasi-judicial decision rezoning specific property.[4] Though some rezone decisions fall under LUPA, Stafne did not seek a rezone of his property. He sought a legislative amendment to the County's comprehensive plan, including to the plan's future land use map. Because comprehensive plan amendments are not considered "land use decisions," LUPA cannot provide a direct means for judicial review of such amendments. In other words, even if the chances for successful review before the growth board are slim, that cannot change a non-land-use decision into a land use decision under LUPA. The proper procedure for challenging a local government's decision not to adopt a proposed comprehensive plan amendment is to appeal first to the growth board and next to the superior court under the APA. Therefore, we agree with the County and hold that a party challenging a decision related to a comprehensive plan must seek review before the growth board first and cannot seek relief in superior court under LUPA.

¶20 We also agree with the County that the Court of Appeals misunderstood the growth board's jurisdiction and incorrectly applied the futility exception, allowing Stafne to bypass administrative review before the growth board. Generally, parties are required to exhaust their administrative remedies before seeking judicial review. We have recognized limited exceptions to the exhaustion doctrine in circumstances of fairness or practicality, for example, where appeal would be futile. This futility exception is based on the principle that courts will not require vain and useless acts. Still, a strong bias exists toward requiring parties to

---

[4] In its decision, the Court of Appeals refers to Stafne's request as a rezone. *Stafne*, 156 Wn. App. at 685, 686.

follow the statutorily prescribed administrative path before resorting to the courts and the futility exception is narrowly applied. *Orion Corp. v. State*, 103 Wn.2d 441, 456-57, 693 P.2d 1369 (1985).

¶21 In this case, the Court of Appeals erred in its procedural and substantive application of the futility exception. Procedurally, at best, the futility exception permits a party to skip the "vain" or "useless" step in the review process. In no circumstance would the exception permit appeal under some other distinct, inapplicable statutory review scheme. According to the Court of Appeals, the futile step in this case was appealing to the growth board. But, if the futility exception applied, skipping review before the board simply would have allowed Stafne to appeal directly to the superior court under the procedures provided for in the GMA and APA, and not LUPA as the Court of Appeals concluded.

¶22 More important is the Court of Appeals' substantive error. Because the futility exception is narrowly applied and parties are rarely excused from administrative review, it is helpful to illustrate when we have found exhaustion futile. For example, we found it appropriate to apply the futility exception in *Orion*, the case the Court of Appeals relied upon. In that case, Orion owned the majority of land in Padilla Bay, an area designated as a shoreline of statewide significance, and its land included an estuarine sanctuary dedicated to long term maintenance of the ecosystem. Orion's development plans were incompatible with the area's designation, and the State and Skagit County had a clear policy that prevented development of the area. Although Orion could have, as a step in the "administrative process," applied for a development permit, we noted that it was evident from the existing policy that the permit would not have been granted. Moreover, as Orion maintained, it would have taken at least two years and cost over $200,000 to pursue that administrative remedy. Given these circumstances, we held that exhausting administrative remedies

would have been futile and that Orion was permitted to seek review directly in superior court. *Orion*, 103 Wn.2d at 443, 459-61.

¶23 On the other hand, we have previously explained the importance of following the GMA administrative appeal process in situations like Stafne's. In *Torrance*, as occurred here, the property owner sought redesignation of his property by submitting a docket proposal during the county council's annual consideration of comprehensive plan amendments. The council decided not to change the property's designation. The owner appealed to the growth board, which found that the council's decision not to change the property's designation was a legal exercise of legislative discretion. Instead of appealing the growth board's decision under the APA, the owner sought a constitutional writ of certiorari in superior court. The superior court granted the writ, which we reversed, stressing the importance of following the statutorily prescribed review procedures and holding that the decision to forgo an available appeal was fatal to the owner's case. *Torrance*, 136 Wn.2d at 785-87, 792. This exhaustion principle applies equally here.

¶24 In this case, the Court of Appeals read the growth board's decisions as consistently holding it "lacks jurisdiction" over actions like Stafne's, that is, where the party alleges that the failure to adopt a proposed comprehensive plan amendment means the plan is noncompliant with the GMA. This, as the court determined, meant that appeal to the board was futile. But while the board has consistently rejected claims such as Stafne's, as the circumstances in *Orion* demonstrate, more is needed before a party can be excused from exhausting administrative remedies. Futility does not exist merely because the agency's decision would be unfavorable or, as in this case, may have resulted in a final order denying relief.

¶25 Under the GMA, the only statutory requirement for a party to appeal the growth board's decision to the superior court is that the board's decision be final. RCW 36.70A-

.300(5). A final decision by the growth board provides helpful analysis and reasoning to the superior court, as a court of review. Such a decision is also important given the deferential standard of review under the GMA and expertise of the board. As we now explain, this is precisely what the board's decisions in cases like Stafne's offer, which the Court of Appeals overlooked.

¶26 A closer reading of the board's decisions shows it has not simply held it lacks jurisdiction over claims like Stafne's.[5] Significantly, the board's decisions cannot be read as establishing that the petitioner should have sought review elsewhere. Rather, in each decision, the board reviews the facts and issues specific to the case and makes a threshold determination on the petitioner's claims. In those decisions, the board has generally explained its reason for denying relief as follows:

> While RCW 36.70A.130 authorizes a local government to amend comprehensive plans annually, it does not require amendments. Moreover, it does not dictate that a specific proposed amendment be adopted. [When] the County takes an action pursuant to the authority of RCW 36.70A.130 or fails to meet a duty imposed by some other provision of the GMA, [the petitioner] may have an action that could properly be brought before the Board.

*Cole*, No. 96-3-0009c, at 10, 1996 GMHB LEXIS 389, at *19 (footnote omitted). The board subsequently evaluates the petitioner's claims, explains that the petitioner failed to identify a statutory provision mandating that the county or city council amend the plan as the petitioners claim, and enters a final order. *Cole*, No. 96-3-0009c, at 10, 1996

---

[5] That the growth board lacks "jurisdiction" over decisions not to adopt proposed amendments is not entirely accurate. Under the GMA, the board's jurisdiction is over petitions alleging GMA noncompliance stemming from either action or inaction of a local government. Thus, the question is not whether the board has jurisdiction to review claims such as Stafne's—it does; the question instead is whether the growth board has authority to grant relief to parties, like Stafne, where there has been no showing that the amendment is required by the GMA or other law.

GMHB LEXIS 389, at *9; *see, e.g., SR 9/US 2 LLC*, No. 08-3-0004, at 5, 2009 GMHB LEXIS 26, at *9-10 ("[*a*]*bsent a duty to amend* its Plan . . . such decisions are within the jurisdiction's discretion . . . and there is no evidence that the County ha[d] a duty to amend its plan to address the Petitioner's proposal" (emphasis added)).

¶27 We agree with the board's determinations in cases like *Cole* and *SR 9/US 2 LLC*. County and city councils have legislative discretion in deciding to amend or not amend their comprehensive plans.[6] Absent a duty to adopt a comprehensive plan amendment pursuant to the GMA or other law, neither the board nor a court can grant relief (that is, order a legislative discretionary act). In other words, any remedy is not through the judicial branch. Instead, the remedy is to file a proposal at the County's next annual docketing cycle or mandatory review or through the political or election process.

¶28 Importantly, the board's consistent determinations explaining why it cannot grant relief to parties like Stafne provide the superior court with a GMA framework for review. This makes it imperative that courts require parties to exhaust administrative remedies before exercising judicial review. Moreover, a growth board's order denying relief to a party, based on the party's failure to identify a provision in the GMA requiring a local government to amend its plan, is final and appealable to the superior court thereafter. A final order is all that the GMA requires for appealing a board's decision to the superior court. Given these reasons, we hold that the Court of Appeals erroneously concluded that Stafne was permitted to bypass GMA review before the growth board.

¶29 We turn now to Stafne's claims. Stafne first contends that the superior court has jurisdiction through its constitutional writ authority. The superior court has

---

[6] Though amendments are *considered* annually, RCW 36.70A.130(2)(a) does not require jurisdictions to actually amend their plans annually.

inherent power under article IV, section 6 of the Washington State Constitution to review administrative decisions for illegal or manifestly arbitrary acts. A constitutional writ of certiorari is discretionary with the court. This discretion can be exercised when no other adequate remedy at law is available and when the decision below is arbitrary, capricious, or contrary to law. *Saldin Sec., Inc. v. Snohomish County*, 134 Wn.2d 288, 292, 949 P.2d 370 (1998). As we mentioned, in *Torrance* we squarely addressed this issue of when a superior court has constitutional writ authority to review a county's decision not to adopt an amendment redesignating land in a comprehensive plan. There, we held that a constitutional writ was unavailable where a right to appeal exists and the failure to appeal is not excused. *Torrance*, 136 Wn.2d at 788, 793. That same reasoning applies here.

¶30 Stafne did not appeal the Council's decision to the growth board, failing to utilize an available statutory right of appeal and leaving no administrative decision to review. As in *Torrance*, Stafne's failure to exhaust administrative remedies means the superior court cannot grant a constitutional writ.

¶31 Finally, Stafne asserts the Court of Appeals erred by holding that the trial court properly denied his summary judgment motion seeking declaratory relief. Declaratory relief will not be ordered where the petitioner has an adequate legal remedy. *Reeder v. King County*, 57 Wn.2d 563, 564, 358 P.2d 810 (1961). Stafne sought a judgment declaring the legal consequences of his boundary line adjustment, which incorporated the land he acquired from DNR into the parcel he already owned. A boundary line adjustment is a final land use decision that Stafne could have timely sought relief under LUPA. RCW 36.70C-.020(2)(a). He did not. Moreover, the legal effect of a boundary line adjustment is to establish new boundary lines for parcels of real property; the adjustment does not legally affect how that land will be designated in a compre-

hensive plan or zoned. We agree with the Court of Appeals' holding that declaratory relief is unavailable to Stafne.

## CONCLUSION

¶32 We affirm the Court of Appeals and hold that parties seeking to appeal a jurisdiction's decision not to adopt a proposed comprehensive plan amendment must seek review before the growth board pursuant to the GMA, which prescribes the review process. We also hold that review under LUPA does not apply and that failure to appeal to the growth board bars Stafne's claims.

MADSEN, C.J.; CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, and WIGGINS, JJ.; and ALEXANDER, J. PRO TEM., concur.

Reconsideration denied May 15, 2012.