FILED
COURT OF APPEALS
DIVISION II

2015 FEB -3 AM 8:48

STATE OF WASHINGTON

BY_____
            DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CONCRETE NOR'WEST, a division of Miles Sand & Gravel Company; and 4M2K, LLC, | No. 45563-3-II |
| Appellants, | PUBLISHED OPINION |
| v. | |
| WESTERN WASHINGTON GROWTH MANAGEMENT HEARINGS BOARD, | |
| Respondent. | |

BJORGEN, J. — Concrete Nor'West, a division of Miles Sand and Gravel Company, and 4M2K LLC (collectively, CNW) appeal a superior court's affirmance of a final decision and order from the Western Washington Growth Management Hearings Board (the Board). The Board found no violation of Washington's Growth Management Act (GMA), chapter 36.70A RCW, in Whatcom County's denial of a proposed amendment to its comprehensive plan and zoning map designating certain property as mineral resource land (MRL). CNW argues that the GMA, Whatcom County's comprehensive plan, and the Whatcom County Code (WCC) collectively required adoption of the amendment. Because we agree with the Board that they did not, we affirm.

FACTS

Concrete Nor'West operates a gravel mine on land in Whatcom County. Pursuant to the WCC, CNW applied to amend Whatcom County's comprehensive plan and its zoning map to expand a MRL overlay onto a parcel adjacent to its mine and to re-designate that parcel from commercial forestry land to MRL.[1]

Staff at Whatcom County Planning and Development Services (planning staff) processed CNW's application and determined that the parcel at issue satisfied the MRL designation criteria found in the County's comprehensive plan. After analyzing the criteria prescribed in the WCC for considering an amendment to the comprehensive plan and determining that the amendment satisfied them, the planning staff recommended approving CNW's request. After a hearing, Whatcom County's Planning Commission concurred with the planning staff, recommended adopting the proposal, and forwarded CNW's application to the Whatcom County Council for consideration.

CNW's proposal did not command a majority of the Council. Three members voted to pass the proposed amendment, three voted to reject it largely based on concerns about water quality and the effects of future mining on nearby agricultural lands, and one abstained. Because the proposed amendment failed to garner a majority of the Council, it was not adopted.

---

[1] The planning staff phrase CNW's request as one to "[a]mend the Comprehensive Plan Map and Zoning Map to expand the existing Mineral Resource Land (MRL) overlay by an additional 280 acres over the existing Commercial Forestry zone, and change the Commercial Forestry designation to a MRL designation." Administrative Record (AR) at 32. The Planning Commission characterizes it as one to "amend the Whatcom County Comprehensive Plan map from Commercial Forestry to Mineral Resource Lands (MRL) and the zoning map to create an MRL Overlay for 280 acres located on the northern slope of Eddys Mountain." AR at 276.

No. 45563-3-II

CNW petitioned the Board for review of the Council's failure to pass the proposed amendment. CNW argued that because RCW 36.70A.120, part of the GMA, requires counties and cities to "perform [their] activities . . . in conformity with [their] comprehensive plan[s]," and because the parcel met the comprehensive plan's criteria for designation as MRL, the Council had a duty under the comprehensive plan and the GMA to pass the proposed amendment and re-designate the land. Administrative Record (AR) at 9-10. The Board disagreed, stating that "the fatal flaw in Petitioners' argument is the lack of language in any of the cited Goals/Policies or the designation criteria that require the County to designate land as MRL when the designation criteria are met." AR at 1186 (footnote omitted). Because the Council had no duty to designate the land by adopting the amendment, the Board held that no violation of the GMA had occurred and that it lacked the power to grant CNW relief. Therefore, it dismissed CNW's petition for review with prejudice. AR at 1187-88 (citing *Stafne v. Snohomish County*, 174 Wn.2d 24, 37-38 & n.5, 271 P.3d 868 (2012) (citing *SR9/US 2 LLC v. Snohomish County*, No. 08-3-004, 2009 WL 1134039 at *4 (Cent. Puget Sound Growth Mgmt. Hr'gs Bd. Apr. 9, 2009) and *Cole v. Pierce County*, No. 96-3-009c, 1996 WL 678407 at *7-8, 10 (Cent. Puget Sound Growth Mgmt. Hr'gs Bd. July 31, 1996))).

CNW petitioned for superior court review of the Board's decision under the Administrative Procedure Act, chapter 34.05 RCW (Act). The superior court affirmed the Board, and CNW appealed.

ANALYSIS

I. THE STANDARDS OF REVIEW

The legislature has charged the Board "with adjudicating GMA compliance, and, when necessary, with invalidating noncompliant comprehensive plans and development regulations."

3

*King County v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.,* 142 Wn.2d 543, 552, 14 P.3d 133 (2000). By statute, the Board's review is deferential and it must

> "find compliance unless it determines that the action by the state agency, county, or city is clearly erroneous in view of the entire record before the board and in light of the goals and requirements of [the GMA]."

*King County,* 142 Wn.2d at 552 (quoting RCW 36.70A.320(3)) (alteration in original). An action by a state agency, county, or city is clearly erroneous if "the Board . . . [is] 'left with the firm and definite conviction that a mistake has been committed.'" *King County,* 142 Wn.2d at 552 (quoting *Dep't of Ecology v. Pub. Util. Dist. No. 1 of Jefferson County,* 121 Wn.2d 179, 201, 849 P.2d 646 (1993)).

We review a Board decision by applying the standards of chapter 34.05 RCW directly to the record before the Board, sitting in the same position as the superior court. *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.,* 136 Wn.2d 38, 45, 959 P.2d 1091 (1998). We "review[] the Board's legal conclusions de novo," but, because of its expertise in administering the GMA, we accord substantial weight to the Board's interpretation of its provisions. *King County,* 142 Wn.2d at 553. CNW bears the burden of showing the invalidity of the Board's decision, and thus, as relevant here, the burden of showing that the Board "erroneously interpreted or applied the law." *Feil v. E. Wash. Growth Mgmt. Hr'gs Bd.,* 172 Wn.2d 367, 376-77, 259 P.3d 227 (2011) (citing RCW 34.05.570(1)(a), (3)(d)).

## II. THE GMA

Among the GMA's core requirements is the mandate that counties and cities subject to it "adopt comprehensive growth management plans and development regulations in accordance with the Act's provisions." *King County,* 142 Wn.2d at 546. Whatcom County is subject to the GMA. *See* RCW 36.70A.040(1). For jurisdictions subject to it, the GMA requires periodic

reviews and updates to comprehensive plans and development regulations and authorizes the consideration of comprehensive plan amendments no more than once a year, with exceptions. RCW 36.70A.130.

The GMA prescribes 13 exclusive goals that cities and counties must use "for the purpose of guiding the development of comprehensive plans." RCW 36.70A.020. Two of these goals are especially pertinent to the present appeal: to "[m]aintain and enhance natural resource-based industries," RCW 36.70A.020(8), and to "[p]rotect the environment and enhance the state's high quality of life, including air and water quality, and the availability of water." RCW 36.70A.020(10).

As CNW notes, the GMA sets out specific procedures for accomplishing its goal of maintaining and enhancing natural resource-based industries. First, the Act requires cities and counties to designate "where appropriate . . . [m]ineral resource lands that are not already characterized by urban growth and that have long-term significance for the extraction of minerals." RCW 36.70A.170(1)(c). Next, RCW 36.70A.060 (1) requires cities and counties within its scope to "adopt development regulations . . . to assure the conservation of agricultural, forest, and mineral resource lands designated under RCW 36.70A.170." The GMA further requires that cities and counties operating under its strictures periodically review their mineral resource designations in light of new information concerning mineral deposits and certain new or modified model regulations. RCW 36.70A.131.

III. WHATCOM COUNTY'S COMPREHENSIVE PLAN AND COUNTY CODE

The Whatcom County comprehensive plan sets out eight goals and associated policies for "guid[ing] Whatcom County in land use decisions involving lands where mineral resources are present." AR at 144. Of these, Goal 8J states an intent to

5

[s]ustain and enhance, when appropriate, Whatcom County's mineral resource industries, support the conservation of productive mineral lands, and discourage incompatible uses upon or adjacent to these lands.

AR at 146. Goal 8K contains the County's aspiration to

[e]nsure that mineral extraction industries do not adversely affect the quality of life in Whatcom County, by establishing appropriate and beneficial designation and resource conservation policies, while recognizing the rights of all property owners.

AR at 146. Goal 8L declares Whatcom County's intent to

[a]chieve a balance between the conservation of productive mineral lands and the quality of life expected by residents within and near the rural and urban zones of Whatcom County.

AR at 147. Goal 8N contains Whatcom County's aim to

[m]aintain the conservation of productive mineral lands and of productive forestry lands within or near the forestry zones of Whatcom County.

AR at 149. Finally, Goal 8P expresses the County's intent to

[d]esignate Mineral Resource Lands [MRLs] containing commercially significant deposits throughout the county in proximity to markets in order to avoid construction aggregate shortages, higher transport costs, future land use conflicts and environmental degradation. Balance MRL designations with other competing land uses and resources.

AR at 149. Goal 8P is implemented by Policy 8P-1, which states:

Seek to designate 50 year supply of commercially significant construction aggregate supply to the extent compatible with protection of water resources, agricultural lands, and forest lands.

AR at 146-53.

After setting out these goals and policies, the comprehensive plan prescribes criteria for designating property as MRL. The criteria for nonmetallic MRL are, in relevant part:

1.    Non-metallic deposits must contain at least one million cubic yards of proven and extractable sand, gravel, or rock material per new MRL Designation.
2.    Minimum MRL Designation size is twenty acres.

6

3.    Expansion of an existing MRL does not need to meet criteria 1 or 2.

4.    MRL Designation status does not apply to surface mines permitted as an accessory or conditional use for the purpose of enhancing agriculture or facilitating forestry resource operations.

5.    All pre-existing legal permitted sites meeting the above criteria will be designated.

6.    The site shall have a proven resource that meets the following criteria; Sand and gravel deposits must have a net to gross ratio greater than 80% (1290 cy/acre/foot).

7.    MRL Designations must not be within nor abut developed residential zones or subdivisions platted at urban densities.

8.    MRL Designations must not occur within the 10 year zone of contribution for designated wellhead protection areas. . . .

9.    MRL Designation should not enclose by more than 50% non-designated parcels.

AR at 155-56.

Equally applicable to the designation of mineral lands are the procedures for amending the comprehensive plan, codified in WCC 2.160. These specify that a proposed amendment may be approved only if the Council finds that all of five listed criteria are met. Of these, the third criterion specifies that

[t]he public interest will be served by approving the amendment. In determining whether the public interest will be served, factors including but not limited to the following shall be considered:
      a. The anticipated effect upon the rate or distribution of population growth, employment growth, development, and conversion of land as envisioned in the comprehensive plan.
      b. The anticipated effect on the ability of the county and/or other service providers, such as cities, schools, water and/or sewer purveyors, fire districts, and others as applicable, to provide adequate services and public facilities including transportation facilities.
      c. Anticipated impact upon designated agricultural, forest, and mineral resource lands.

WCC 2.160.080.

## IV. THE COUNTY COUNCIL DID NOT HAVE A DUTY TO DESIGNATE THE PROPERTY AS MRL

We turn now to the issue raised by CNW's appeal: whether or not Whatcom County's comprehensive plan imposes a duty on the Council to adopt an amendment and designate land as MRL if it satisfies the plan's designation criteria.[2, 3] We conclude that it does not.

A.    The Comprehensive Plan's Goals, Policies, and Designation Criteria

Once a comprehensive plan is in place, the GMA gives effect to the plan's provisions by requiring that "[e]ach county and city that is required or chooses to plan under RCW 36.70A.040 shall perform its activities . . . in conformity with its comprehensive plan." RCW 36.70A.120. This provision thus turns the failure to conform to a comprehensive plan into a GMA violation that the Board may remedy.

Any duty in the comprehensive plan to designate mineral lands would be extracted either from its relevant goals and policies or its designation criteria. Goals 8J, 8K, 8L, and 8N, set out

---

[2] We note here what is *not* before us. CNW's briefing to the Board and our court argued only that Whatcom County violated the GMA because the denial of the proposed amendment was not in conformity with the comprehensive plan. CNW's argument presumes that the plan itself complies with the GMA, but that the Council violated RCW 36.70A.120 when it acted inconsistently with that plan. CNW's supporting amici argue that other provisions of the GMA and implementing Washington Administrative Code provisions required the adoption of CNW's proposed amendment, and CNW echoed these contentions at oral argument. Amici's argument, thus, asserts that the comprehensive plan itself violates the GMA because it does not designate the property at issue as MRL. As such, it is the type of "disguised challenge to the adequacy of the comprehensive plan itself" that the parties must first present to the Board, which has exclusive jurisdiction over such claims. *Woods v. Kittitas County*, 162 Wn.2d 597, 614-15, 174 P.3d 25 (2007). We therefore do not consider amici's argument.

[3] In support of its argument that the Board erred, CNW contends the Board misapplied *Stafne*. In *Stafne*, our Supreme Court held that absent a duty to adopt a comprehensive plan amendment pursuant to the GMA or other law, neither the Board nor a court can order the legislative discretionary act of adopting the amendment. *Stafne*, 174 Wn.2d at 37-38 & n.5 (citing *SR9/US 2 LLC*, 2009 WL 1134039 at *4 and *Cole*, 1996 WL 678407 at *7, 10). Here, we hold that the Council was under no duty to adopt CNW's proposal. Therefore, the holding in *Stafne* directly supports our upholding the Council's action.

above, fix the two central and often contentious ends of maintaining the supply of productive mineral lands while protecting the quality of life, other resources, and the rights of all property owners. These goals are made more corporeal by Policy 8P-1, which states that the County will "[s]eek to designate" a 50-year supply of construction aggregate to the extent compatible with protection of water resources, agricultural lands, and forest lands. AR at 153. Nowhere do these goals and policies state that any parcel satisfying the designation criteria must be designated as MRL. Nowhere do they impose a duty to designate a specific level or amount of MRLs. In fact, their closest approach to any specific duty, the 50-year supply policy of Policy 8P-1, requires the County to "[s]eek to" designate only if compatible with the protection of water and other resources. AR at 153.

In sum, the goals and policies of the comprehensive plan recognize the importance of MRLs, state the clear goal and policy of fostering them and the industries they support, but also make clear that this must be accomplished in a way compatible with the protection of other resources and the quality of life. In fact, Goal 8P ends its description of the goal of designating MRLs with the directive: "Balance MRL designations with other competing land uses and resources." AR at 153. These goals and policies create the breathing space of judgment, not the chains of duty. They do not require the County to designate the parcel at issue as MRL.

We turn next to the MRL designation criteria of the comprehensive plan, set out above in pertinent part. Of these, criteria 1, 2, 6, 7, and 8 on their face impose necessary, but not sufficient conditions for designation. In other words, a parcel must meet these conditions to be designated, but meeting the conditions does not require designation. Some of the criteria, such as numbers 4 and 9, are not classifiable from their terms as either necessary or sufficient. The only designation criterion expressly describing a sufficient condition is number 5, stating that

9

"[a]ll pre-existing legal permitted sites meeting the above criteria will be designated." AR at 155. This criterion, however, is not relevant to the case before us, because the record does not show that the property at issue is a legally permitted mining site.

Turning to the purpose of the designation criteria, both the GMA and the goals and policies of the comprehensive plan make clear that the criteria, other than number 5, should not be read to announce any duty to designate MRLs. First, the GMA requires cities and counties to designate MRLs only "where appropriate." RCW 36.70A.170(1). The flexibility inherent in that exercise gives jurisdictions the room to reconcile the easily conflicting GMA goals of enhancing natural resource-based industries and protecting the environment and the quality of life. RCW 36.70A.020(8), (10); RCW 36.70A.3201.

Second, the goals and policies of the comprehensive plan require the Council to make comparative judgments about the effect of designation on Whatcom County's environment, quality of life, and mineral, agricultural, and forestry industries. The concerns involved with these comparative judgments are many and involve a multitude of issues. However, the designation criteria touch but a few of the issues involved in a determination that designation is appropriate. If the designation criteria were truly meant to divest the Council of its discretion in making the determination of where designating a parcel as MRL is appropriate, the criteria would be much more exhaustive in their examination of the effects of the designation. To be consistent with the plan's goals and policies, as well as the text of the designation criteria themselves, we cannot read those criteria to compel the designation of property meeting their terms.

Following the designation criteria in the comprehensive plan is the mineral resources selection method, which states:

MINERAL RESOURCES - SITE SELECTION METHOD
1. Sites meeting Mineral Resources Designation Criteria 1 -4 (and areas enclosed by these sites greater than 50 %).
2. Sites requested by owner or operator meeting designation criteria.
3. Sites that are regionally significant meeting designation criteria.
4. Sites adjacent to both roads and other proposed MRL sites meeting designation criteria.

AR at 881. The text is silent as to the role of these four categories. What remains clear, though, is that reading the four categories to create a duty to designate the land they describe would bluntly contradict the balancing approach of the comprehensive plan's goals and policies, for the reasons already rehearsed.

Such a reading would also oppose the general criteria for amending the comprehensive plan, found in WCC 2.160.080. As noted above, WCC 2.160.080 sets out five criteria, each of which must be met before a comprehensive plan amendment may be approved. The third criterion requires that the amendment serve the public interest. WCC 2.160.080(A)(3). Similarly to the goals and policies discussed above, WCC 2.160.080(A) does not require the designation of any specific parcel as MRL, but does require the consideration of the public interest in its third criterion. Interpreting the mineral resources selection method to require designation of any parcel falling within its four categories would ignore the elements of the public interest which WCC 2.160.080(A) demands be considered. To avoid these conflicts with both the comprehensive plan's goals and policies and with WCC 2.160.080, the mineral resources selection method in the designation criteria cannot be read as imposing a duty to designate all parcels falling within its categories.

B.    The Role of Community Displeasure in the Council's Decision

CNW contends that the failure to designate the property at issue as MRL cannot be justified under WCC 2.160.080(A)(3)'s "public interest" criterion, because the Council

11

confounded the public interest with community opposition. In support, CNW cites a number of cases which overturned permitting or quasi-judicial decisions due to overreliance on community attitudes or displeasure.

The rule governing this issue was set out in *Sunderland Family Treatment Services v. City of Pasco*, 127 Wn.2d 782, 797, 903 P.2d 986 (1995): "[w]hile the opposition of the community may be given substantial weight, it cannot alone justify a local land use decision." Whether or not the Council's failure to designate is the sort of action to which this rule has been applied, the Council's action here does not offend its terms. The record does disclose substantial opposition to the proposed MRL designation. The record also discloses, though, that council members voting against the designation did so with a view to serving the public interest, which they were required to take into account. To prohibit local officials from considering elements of the public interest simply because those elements were strongly argued to them is to plunge deeply into absurdity. The record shows that community opposition alone did not justify the Council's decision. Therefore, the Council's decision does not offend the rule in *Sunderland*.

C.      The Consideration of the Public Interest at the Designation Stage

CNW also contends that the Council's consideration of elements of the public interest was improper because Whatcom County's system of phased project review demands that those elements be considered only during project permitting. In support, CNW cites board decisions in *Franz v. Whatcom County Council*, No. 05-2-0011, 2005 WL 2458412 at *1 (W. Wash. Growth Mgmt. Hearings Bd. Sept. 19, 2005) and *Wells v. Whatcom County Council*, No. 97-2-0030c, 1998 WL 43206 at *1 (W. Wash. Growth Mgmt. Hr'gs Bd. Jan 16, 1998), as well as a hearing examiner decision in an earlier phase of CNW's application, *Concrete Nor'West v. Whatcom*

*County*, No. SEP2009-00132 and PLN 2009-0013 (Whatcom County Hr'g Exam'r July 16, 2009). For a number of reasons, we disagree with CNW's reading of these cases.

*Wells* and *Franz* each involved challenges to prior designations of MRLs by Whatcom County. The challenge in *Wells* rested on the argument that the designation resulted in prohibited impacts to residential uses. The Board spurned this argument, holding that the record lacked evidence that the designation created any "prohibited impacts on residential uses," *Wells*, 1998 WL 43206, at *10, and that "[s]pecific conflicts are appropriately addressed in a site-by-site permitting and review process." *Wells*, Order on Reconsideration, 1998 WL 312640 at *2 (W. Wash. Growth Mgmt. Hr'gs Bd. Feb. 19, 1998). The Board also pointed out that Policy 8P-4 of the comprehensive plan specifies that mining will be allowed in MRLs through an administrative permit process, requiring environmental review and application of appropriate site-specific conditions. *Wells*, 1998 WL 43206 at *10.

The petitioner in *Franz* contended that an MRL designation was flawed, because it did not consider the likely impacts to groundwater, wetlands, and habitat and because it was not consistent with the adjacent rural residential area. The Board rejected this position, holding that

> [l]ikely impacts on water and critical areas of any specific mining operation are dealt with and used as constraints and conditions at the time of evaluating a request for an administrative permit for mining in Whatcom County; not in comprehensive plan amendments about natural resources . . . nor in designations of MRLs.

*Franz*, 2005 WL 2458412, at *9.

*Wells* and *Franz* rebuff a challenge to an MRL designation based on the failure to consider certain impacts. Crucially, the impacts that each decision holds must be considered at the permit stage are "[s]pecific conflicts" appropriately addressed at permitting, *Wells*, Order on Reconsideration, 1998 WL 312640 at *2, and the impacts "of any specific mining operation." *Franz* 2005 WL 2458412, at *9. These decisions, in other words, stand for the common sense

notion that when making an MRL designation, the County is not required to consider the sort of site-specific environmental or other impacts that must await a specific proposal for realistic consideration.

In contrast, WCC 2.160.080(A)(3), the public interest criterion for comprehensive plan amendments, and the plan's goals and policies discussed above, require at the designation stage a broad consideration of the public interest and a balancing of the need to preserve mineral resources with the need to protect water and other resources and the quality of life. This is precisely what those Council members voting against the designation did. The County's failure to adopt the proposed designation offends neither *Wells* nor *Franz*.[4]

The County's action is also consistent with the GMA itself. As noted, among its goals guiding the development of comprehensive plans, the GMA lists both the goal of maintaining and enhancing natural resource-based industries and the goal of protecting the environment and enhancing the state's high quality of life, "including air and water quality, and the availability of water." RCW 36.70A.020(10). The GMA's command in RCW 36.70A.170(1) to designate MRLs "where appropriate" is informed by these goals. Thus, consideration of the public interest and balancing of competing interests lies at the heart of deciding whether a designation is "appropriate." That, again, is what the three council members did. Nothing in that consideration involved the sort of specific and proposal-bound evaluation that must await a permit application.

In the iterative progress of land use regulation and approval, the phasing of project review can be both a delicate and consequential matter. If potential impacts are considered too early, the absence of a specific proposed use may turn their consideration into a vague and

---

[4] The hearing examiner's decision on which CNW also rests its argument relied heavily on *Wells* and *Franz*. Thus, our analysis of those two cases adequately addresses the examiner's decision.

14

superficial exercise. If considered too late in the process, project momentum may cloud adequate scrutiny of a project's effects. *See, e.g., King County v. Boundary Review Bd.*, 122 Wn.2d 648, 664, 860 P.2d 1024 (1993); *Lands Council v. Washington St. Parks & Recreation Comm'n*, 176 Wn. App. 787, 803, 309 P.3d 734 (2013). Late consideration may also threaten principled review if impacts cannot be considered at the plan- or policy-making stage, but those plans or policies are then used at the permitting stage to conclude that the impacts are allowable.

The goals and policies of the Whatcom County comprehensive plan, together with the criteria in WCC 2.160.080 for amending that plan, chart a sound course through these shallows. As concluded above, these provisions apply at the designation stage. They state the clear goal and policy of fostering MRLs and the industries they support, but also make clear that this must be accomplished in a way compatible with the protection of other resources, including water and the quality of life. In doing this, Goal 8P sums up the designation process with the directive: "Balance MRL designations with other competing land uses and resources." AR at 153. The record, although arguably thin, shows that those council members voting against the designation followed this course. The Council's consideration of the public interest was proper.

## CONCLUSION

The comprehensive plan does not require the County to designate the property at issue as MRL. Therefore, the failure to designate this property did not violate the requirement of RCW 36.70A.120, that jurisdictions subject to the GMA perform their activities in conformity with their comprehensive plans. For these reasons, the decision by Whatcom County not to

designate the property as MRL was consistent with both the GMA and the comprehensive plan.

We affirm.

BJORGEN, J.

We concur:

JOHANSON, C.J.

MELNICK, J.