IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| WRIGHT'S CROSSING, LLC; SCOTT B. THOMPSON, its Manager/Owner, | No. 82047-8-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| ISLAND COUNTY, acting through its Board of Commissioners; | |
| Respondent, | |
| WHIDBEY ENVIRONMENTAL ACTION NETWORK ("WEAN"); | |
| Intervenor-Respondent, | |
| and | |
| ENVIRONMENTAL AND LAND USE HEARING OFFICE, acting through the WESTERN WASHINGTON REGION GROWTH MANAGEMENT HEARINGS BOARD, | |
| Defendant. | |

CHUN, J. — In 2017, Wright's Crossing, LLC, and its manager, Scott Thompson (collectively, Wright's Crossing) requested that Island County (County) expand the Oak Harbor Urban Growth Area (UGA) by about 300 acres. Wright's Crossing owned development rights for most of the 300 acres at issue and wanted to build housing on it. The County conducted an initial review of Wright's Crossing's proposed modification to the Oak Harbor UGA and declined

Citations and pin cites are based on the Westlaw online version of the cited material.

to place the proposal on its annual review docket. Wright's Crossing appealed the decision to the Growth Management Hearings Board (GMHB) under the Growth Management Act (GMA). Whidbey Environmental Action Network (WEAN) intervened. The GMHB dismissed the appeal, concluding that the decision not to docket the proposal was discretionary and that it could not provide relief. Wright's Crossing appealed to Thurston County Superior Court under the Administrative Procedure Act (APA). The superior court affirmed. Wright's Crossing appeals again and we affirm.

## I. BACKGROUND

### A. GMA Structure

The purpose of the GMA is to encourage a comprehensive and coordinated approach to managing population growth. RCW 36.70A.010. It requires a large county to adopt a comprehensive plan, which is a "generalized coordinated land use policy statement of the governing body of a county or city."[1] RCW 36.70A.030(5), RCW 36.70A.040. The comprehensive plan must include a designation of a UGA in which "urban growth shall be encouraged and outside of which growth can occur only if it is not urban in nature." RCW 36.70A.110(1), (6). Counties must designate UGAs with sufficient areas and densities to accommodate the projected growth in that area for 20 years. RCW 36.70A.110(2).

---

[1] RCW 36.70A.120 requires that a county perform its activities in conformity with its comprehensive plan.

The GMA requires counties to adopt Countywide Planning Policies (CWPPs), which are "used solely for establishing a countywide framework from which county and city comprehensive plans are developed" and "ensure that city and county comprehensive plans are consistent." RCW 36.70A.210(1). CWPPs must address policies for planning within UGAs. RCW 36.70A.210(3).

The GMA requires counties to conduct a periodic review—on an eight-year cycle—of their UGAs to determine whether revisions are necessary. RCW 36.70A.130(3)–(5). But amendments to a comprehensive plan, including modifications to the UGA, may occur outside the periodic review schedule. The GMA requires counties to establish a public participation program identifying schedules and procedures for the county to consider proposed amendments or revisions no more than once a year. RCW 36.70A.130(2)(a).

B. The County's Comprehensive Plan Amendment Procedure

As required by RCW 36.70A.130(2), Island County Code (ICC) Chapter 16.26 sets forth the process for review and amendment of the County's Comprehensive Plan. Members of the public may apply for an amendment to the Comprehensive Plan. ICC 16.26.050.A. When it receives an amendment proposal, the Planning Commission must conduct an initial review and recommend whether the Board of Commissioners should include the proposal on the annual review docket. ICC 16.26.060. In conducting this initial review, the Planning Commission should consider multiple factors, including whether the County has sufficient resources to conduct a full review of the proposal.

ICC 16.26.060.E. Once the Planning Commission makes a recommendation, the Board of Commissioners must consider the proposal and determine whether to include the proposal on the annual review docket. ICC 16.26.060.

Section 3.3 of the County's CWPP addresses modifications to UGAs. CWPP 3.3.1 provides:

> The review of a UGA for possible expansion is a significant undertaking. Generally UGAs should only be enlarged or modified during the periodic update process; however, UGAs may be modified outside of the periodic update process if necessary to accommodate major and unanticipated fluctuations in Island County's population, or if necessary to accommodate a large employer or institution which cannot reasonably be accommodated within an existing UGA.

CWPP 3.3.3 sets forth four circumstances under which the County may expand UGAs outside the periodic review schedule—including, as applicable here, when population or employment growth in the UGA equals or exceeds 50 percent of the growth allocated at the start of the planning process.[2] Finally, CWPP 3.3.13 provides that proposals to modify UGAs "shall" be placed on the County's annual review docket, according to the process set forth in ICC 16.26.

The County's Comprehensive Plan, at Section 1.5.1.2.3, provides criteria for UGA modification and includes language almost identical to the CWPP. Like CWPP 3.3, Section 1.5.1.2.3 states that UGAs may be modified if one of the same four circumstances is met. Section 1.5.1.2.3 also says that a modification proposal "shall" be placed on the County's annual review docket but does not mention ICC 16.26.

---

[2] The "start of the planning process" is when the County most recently completed a periodic review.

4

The County designated UGAs for Oak Harbor, Coupeville, Langley, and Freeland. The periodic review pertinent to this case was completed in December 2016. During the periodic review, the County finalized the boundaries of its UGAs after conducting a Buildable Lands Analysis (BLA). In the BLA, the County concluded that, based on projected growth over the next 20 years, the Oak Harbor and Coupeville UGAs had enough land to accommodate the growth, and the Langley and Freeland UGAs had more capacity than required to accommodate the growth.

C. Wright's Crossing's Amendment Proposal

In August 2017, Wright's Crossing proposed an amendment expanding the Oak Harbor UGA by about 300 acres. It owns development rights to about 250 acres of the 300 acres at issue and sought to develop 1,000 to 1,500 homes in the area.

Wright's Crossing contended that at least two of the alternative expansion criteria from Comprehensive Plan Section 1.5.1.2.3 and CWPP 3.3.3 were satisfied.[3] It pointed to the increase of personnel at Whidbey Island Naval Air Station and civilian job growth.

The Planning Commission reviewed Wright's Crossing's proposal and recommended that the Board of Commissioners exclude the proposal from the

_____

[3] Wright's Crossing focused on these criteria: "Population growth in the UGA since the start of the planning period equals or exceeds 50% of the population growth allocated to the UGA at the start of the planning period," and, "Employment growth in the UGA since the start of the planning period equals or exceeds fifty percent of the employment growth allocated to the UGA at the start of the planning period." Comprehensive Plan Section 1.5.1.2.3; CWPP 3.3.3.

5

annual review docket.  The Planning Commission noted that Wright's Crossing's proposed amendment would require other Comprehensive Plan amendments; that while the proposed amendment was compatible with housing goals, it conflicted with other Comprehensive Plan goals; and that full review would be resource-intensive and unwarranted.

The Board of Commissioners excluded Wright's Crossing's proposal from the annual review docket for 2018 in County Resolution C-110-17, PLG-012-17.[4] The Board noted that the existing Oak Harbor UGA sufficed to accommodate the projected employment and population growth and that the proposed amendment conflicted with the CWPPs.

D.  Appeals

Wright's Crossing appealed the Board of Commissioners' decision to the GMHB.  WEAN intervened as a party with an interest in the matter.  The County moved to dismiss the appeal, arguing in part that under Stafne,[5] the County's decision not to docket was discretionary and thus the GMHB could not review the issue.  The County also argued that the GMHB should dismiss the appeal for failure to state a claim upon which relief could be granted.  WEAN also moved to dismiss.

The GMHB dismissed for failure to state a claim upon which relief could be granted.  It determined that no law imposed a duty on the County to place Wright's Crossing's proposal on the annual review docket and thus it could not

---

[4] Exclusion was without prejudice under ICC 16.26.060.D.
[5] Stafne v. Snohomish County, 174 Wn.2d 24, 271 P.3d 868 (2012).

provide any relief. Wright's Crossing moved for reconsideration, which motion the GMHB denied.

Wright's Crossing then appealed the GMHB's dismissal to Thurston County Superior Court under the APA, chapter 34.05 RCW. The superior court affirmed.

## II. ANALYSIS

A. Does Section 1.5.1.2.3 Impose a Duty to Docket?

1. Waiver

WEAN says that Wright's Crossing waived its argument based on language at issue in Comprehensive Plan Section 1.5.1.2.3[6] because it did not reference it before the GMHB or the superior court. We disagree.

"RCW 34.05.554 [of the APA] precludes appellate review of issues not raised below." Bowers v. Pollution Control Hr'gs Bd., 103 Wn. App. 587, 597, 13 P.3d 1076 (2000). And "'[i]n order for an issue to be properly raised before an administrative agency, there must be more than simply a hint or a slight reference to the issue in the record.'" Goding v. Civil Serv. Comm'n of King County, 192 Wn. App. 270, 297, 366 P.3d 1 (2015) (alteration in original) (quoting King County v. Washington State Boundary Review Bd., 122 Wn.2d 648, 670, 860 P.2d 1024 (1993)).

Wright's Crossing did not quote the language at issue from Section 1.5.1.2.3 in any of its petitions or briefs below. But it did cite Section 1.5.1.2.3

---

[6] The language at issue in Section 1.5.1.2.3 states, "Modifications proposed by . . . individuals *shall* be submitted to the County . . . and placed on the County's annual review docket." (Emphasis added.)

7

multiple times, quoting a different portion of the provision.[7]  And the GMHB specifically quoted the language at issue in its order of dismissal.  Immediately following the quoted language, the GMHB noted, "The Board has carefully reviewed all Comprehensive Plan sections and all CWPPs referenced by the Petitioner."

Granted, citation to Section 1.5.1.2.3 without quoting or discussing the language at issue may seem like "simply a hint or a slight reference to the issue." Goding, 192 Wn. App. at 297 (quoting Washington State Boundary Review Bd., 122 Wn.2d at 670).  But this rule ensures that the decision-maker—here, the GMHB—had adequate opportunity to address the issue.  See Washington State Boundary Review Bd., 122 Wn.2d at 669 (noting that one policy reason behind rules like RCW 35.05.554 is "'protecting agency autonomy by allowing an agency the first opportunity to apply its expertise, exercise its discretion, and correct its errors'" (quoting Fertilizer Inst. v. United States Environmental Protection Agency, 935 F.2d 1303, 1312–13 (D.C. Cir. 1991))).  And the GMHB quoted the language at issue, specifically said that the Petitioner had referenced Section 1.5.1.2.3, and said that the GMHB had carefully considered the section.  No matter how Wright's Crossing presented the issue, the GMHB had the opportunity to reach the issue and indeed addressed it.  Wright's Crossing thus did not waive this argument.

---

[7] Wright's Crossing quoted this language, "If any of these criteria are met, it will trigger a reevaluation of the population projections."  Section 1.5.1.2.3.

2. Duty

Wright's Crossing says that Comprehensive Plan Section 1.5.1.2.3 imposes a duty on the County to place its proposal on the County's annual review docket. Thus, Wright's Crossing asserts, by showing that population or employment growth would exceed 50 percent of the population growth allocated to the UGA, it had a right to have its proposal placed on the annual review docket. The County does not address the specific language of the Comprehensive Plan but says that ICC 16.26 establishes that docketing decisions are discretionary. WEAN concurs with this reasoning and says that Section 1.5.1.2.3 imposes no mandatory duty to docket. We agree with the County and WEAN.

The APA, chapter 34.05 RCW, governs this appeal. In an APA appeal, we sit "in the same position as the superior court, applying the standards of the APA directly to the record before the agency." Top Cat Enters., LLC v. City of Arlington, 11 Wn. App. 2d 754, 759, 455 P.3d 225 (2020). We will overturn an agency decision only if the agency erred in one of the ways listed under RCW 34.05.570(3). Id. at 759–60. Wright's Crossing contends that the GMHB "erroneously interpreted or applied the law" under RCW 34.05.570(3)(d). "The burden of demonstrating the invalidity of agency action is on the party asserting invalidity." RCW 34.05.570(1)(a).

We review de novo the GMHB's legal conclusions, "giving substantial weight to the [GMHB]'s interpretation of the GMA." Whatcom County v. Hirst,

9

186 Wn.2d 648, 667, 381 P.3d 1 (2016).  Because the GMHB dismissed Wright's

Crossing's petition for failure to state a claim, we must assume that all the facts

alleged in it are true, and no facts are in dispute in this appeal.  See Stickney v.

City of Sammamish, No. 15-3-00017, at 2 (Cent. Puget Sound Growth Mgmt.

Hr'gs Bd. (March 14, 2016) ("All facts alleged in the plaintiff's complaint are

presumed true").

The pertinent language in Section 1.5.1.2.3 states:

Generally UGAs should only be enlarged or modified during the periodic update process; however, *UGAs may be modified outside of the periodic update process if necessary* to accommodate major and unanticipated fluctuations in Island County's population, or if necessary to accommodate a large employer or institution which cannot reasonably be accommodated within an existing UGA.

*Urban Growth Areas may be expanded outside of a GMA mandated periodic update cycle if the expansion is necessary for one of the following reasons.*

A. Population growth in the UGA since the start of the planning period equals or exceeds 50% of the population growth allocated to the UGA at the start of the planning period; or

B. Employment growth in the UGA since the start of the planning period equals or exceeds 50% of the employment growth allocated to the UGA at the start of the planning period; or

C. Written notification is provided by the Department of Defense, or other reliable and verifiable information is obtained, indicating that prior to the next periodic update cycle, Whidbey Naval Air Station Whidbey staffing will increase in a manner which would result in population growth equal to or exceeding 50% of the population growth allocated to the UGA at the start of the planning period; or

D. An opportunity is presented to bring a large scale business, industry, institution, or other significant employer to Island County, and the County and municipality agree that due to the facility or institution's unique characteristics there is no suitable land available inside the current UGA.[8]

---

[8] These four circumstances allowing for modification are identical to those in CWPP 3.3.

*If any of these criteria are met, it will trigger a reevaluation of the population projections*, based on the range of options provided to the County by the Washington State Office of Financial Management. From there, the allocations and buildable lands analysis will also be reevaluated on a countywide scale.

. . .

UGA modifications outside of the period update cycle may be proposed by a municipality, the County, or an individual. *Modifications proposed by municipalities or individuals shall be submitted to the County in a manner consistent with the County's procedures for comprehensive plan amendments and placed on the County's annual review docket.* Modifications proposed by individuals shall not be approved by the County unless the modification is supported by the legislative authority of the affected municipality. For any proposed UGA modification, a current land capacity analysis shall be prepared and shall utilize the procedures described in the CWPPs.

(Emphasis added.)

> a. Whether the last paragraph of Section 1.5.1.2.3 imposes a mandatory duty to docket

The last paragraph of Section 1.5.1.2.3 on its face may appear to impose a duty to docket Wright's Crossing's proposal. It states that amendment proposals "shall be . . . placed on the County's annual review docket." Wright's Crossing says that the word "shall" must be read to be mandatory here because the ICC's interpretive rule says "shall" is always mandatory. ICC 16.26.030. But that applies to the ICC; the Comprehensive Plan does not provide a similar rule. And the word "shall" is not always mandatory. See State v. Rice, 174 Wn.2d 884, 896–97, 279 P.3d 849 (2012) ("Although the word 'shall' is presumptively mandatory, its meaning 'is not gleaned from [use of] that word alone because our purpose is to ascertain legislative intent of the statute as a whole.'" (alteration in

11

original) (citation omitted) (quoting State v. Krall, 125 Wn.2d 146, 148, 881 P.2d 1040 (1994))).

And even if "shall" is mandatory here, the Comprehensive Plan is not the sole source of directives for the County. See RCW 36.70A.3201 (noting that counties must make their local planning decisions "within a framework of state goals and requirements"). Thus, in interpreting the Comprehensive Plan provision, we also look to the GMA, its implementing regulations, CWPPs, and the Island County Code. Together, these sources govern county planning. A review of the overall scheme reveals that no duty exists for the County to skip its initial review and automatically place an amendment proposal on its annual review docket.

The GMA sets forth an expectation that CWPPs and comprehensive plans be consistent, but in case of a conflict, the CWPPs control. See RCW 36.70A.210 (noting that the CWPP framework ensures consistency). WAC 365-196-305(3) states that a county's comprehensive plan "must" comply with the CWPPs. See also Stickney v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 11 Wn. App. 2d 228, 232, 244, 453 P.3d 25 (2019) (noting that comprehensive plans must track CWPPs, and revealing that if an inconsistency exists, the comprehensive plan must change, not the CWPP). And Section LU 2.1.1 of the Comprehensive Plan notes that CWPPs "will be given priority when conflicts arise between jurisdictions." While this case presents a conflict between the Comprehensive Plan and the CWPPs, not between comprehensive plans, this

12

provision highlights the priority the County gives to CWPPs, thus bolstering the argument that they should control in this case.

The CWPP differs from the Comprehensive Plan on this issue.

CWPP 3.3.13 states:

> Modifications proposed by Municipalities or individuals shall be submitted to the County in a manner consistent with the County's procedures for comprehensive plan amendments and placed on the County's annual review docket *(per ICC 16.26).*

(Emphasis added). Unlike Section 1.5.1.2.3, it includes the phrase "per ICC 16.26." Because CWPP 3.3.13 and Section 1.5.1.2.3 conflict in this regard, the CWPP controls and docketing decisions must be made "per ICC 16.26."

As discussed above, ICC 16.26 establishes an amendment proposal review process that is discretionary and considers available resources. According to the ICC 16.26 process, the Planning Commission must conduct an initial review and make a recommendation to the Board of Commissioners. ICC 16.26.060. The Board must then decide whether to place the amendment proposal on the annual review docket. ICC 16.26.060. Under this process, a proposed amendment is not automatically placed on the annual docket. And the County adhered to this process in declining to docket Wright's Crossing's proposal. It considered the factors in ICC 16.26.060, including the County resources. Because this is the approach set forth by the CWPP, it controls.

More generally, a self-imposed automatic duty to docket is unlikely given the regulatory scheme. WAC 365-196-310(4)(e)(i) emphasizes:

> Because of the significant amount of resources needed to conduct a review of the urban growth area, and because some policy objectives require time to achieve, frequent, piecemeal expansion of the urban

13

growth area should be avoided. Site-specific proposals to expand the urban growth area should be deferred until the next comprehensive review of the urban growth area.[9]

WAC 365-196-640(6)(b) notes that "consideration of proposed amendments does not require a full analysis of every proposal within twelve months if resources are unavailable." And WAC 365-196-640(6)(d) says, "Once a proposed amendment is received, the county or city may determine if a proposal should receive further consideration as part of the comprehensive plan amendment process," showing the discretionary nature of decisions like the one the County made here.

Given the foregoing, as well as the substantial weight we afford to the GMHB's interpretation of the GMA, it did not err by concluding that the County did not have a duty to docket Wright's Crossing's proposal. See Hirst, 186 Wn.2d at 667.

      b.  Whether the "trigger" language in Section 1.5.1.2.3 imposes a mandatory duty to docket

Section 1.5.1.2.3 states that if the population growth criteria are met "it will trigger a reevaluation of the population projections" and of the BLA. Wright's Crossing says this language also establishes a mandatory duty to docket. It contends that reevaluation occurs through automatic inclusion on the annual review docket. We disagree.

---

[9] See also CWPP 3.3.1 ("The review of a UGA for possible expansion is a significant undertaking.").

This portion of Section 1.5.1.2.3 does not mention the docketing process. Assuming the language is mandatory[10]—meaning that if one of the four circumstances exist, then reevaluation of the population projections and the BLA must occur—it still does not say that reevaluation occurs through the docketing process, or that docketing is required. Nothing in this portion of the Section suggests a deviation from the amendment review process set forth in ICC 16.26. The language of this portion of Section 1.5.1.2.3 does not impose a duty to docket.

B. Did the GMHB Err by Dismissing for Failure to State a Claim?

Wright's Crossing says that the GMHB erred by granting the County's motion to dismiss for failure to state a claim upon which relief could be granted. WEAN says that because no duty to docket exists, the County's decision not to docket was discretionary and the GMHB was required to dismiss Wright's Crossing's petition. We agree with WEAN.[11]

WEAN relies on Stafne v. Snohomish County, 174 Wn.2d 24, 271 P.3d 868 (2012), for its contention that the GMHB did not err. In that case, Stafne submitted a docket proposal to the Snohomish County Council seeking a redesignation of his property. Id. at 28. The council decided not to place

---

[10] The GMHB and WEAN both suggest that the "may" language at the beginning of Section 1.5.1.2.3 means that the entire provision is permissive. But Wright's Crossing convincingly argues that the "may" language shows that while amendments outside the period review cycle are generally disfavored, they may occur under the listed circumstances.

[11] The County says that even if any duty to docket exists, the GMA does not provide a right of action before the GMHB for the County's decision not to docket. Because we conclude no such duty exists, we decline to reach this issue.

Stafne's proposal on the final docket.  Id.  Under LUPA, Stafne appealed the

County's decision to a trial court rather than appealing to the GMHB.  Id. at 29.

The court held that "parties seeking to appeal a jurisdiction's decision not to

adopt a proposed comprehensive plan amendment must seek review before the

growth board pursuant to the GMA," rather than before a court under LUPA.  Id.

at 40.  In so holding, the court noted:

> We agree with the board's determinations in cases like Cole and SR
> 9/US 2 LLC.  County and city councils have legislative discretion in
> deciding to amend or not amend their comprehensive plans.  *Absent*
> *a duty to adopt a comprehensive plan amendment pursuant to the*
> *GMA or other law, neither the board nor a court can grant relief* (that
> is, order a legislative discretionary act).  In other words, any remedy
> is not through the judicial branch.  Instead, the remedy is to file a
> proposal at the County's next annual docketing cycle or mandatory
> review or through the political or election process.

Id. at 38 (emphasis added).  And in a footnote, the court explained:

> That the growth board lacks "jurisdiction" over decisions not to adopt
> proposed amendments is not entirely accurate.  Under the GMA, the
> board's jurisdiction is over petitions alleging GMA noncompliance
> stemming from either action or inaction of a local government.  Thus,
> the question is not whether the board has jurisdiction to review claims
> such as Stafne's—it does; the question instead is whether the growth
> board has authority to grant relief to parties, like Stafne, where there
> has been no showing that the amendment is required by the GMA or
> other law.

Id. at 37 n.5.

WEAN says that the GMHB properly dismissed Wright's Crossing's

petition because Section 1.5.1.2.3 imposed no duty to docket, and under Stafne,

without such a duty, the GMHB cannot provide relief.  We agree.

As determined above, Section 1.5.1.2.3 of the Comprehensive Plan does

not impose a duty to docket Wright's Crossing's proposal.  Thus, the decision not

to docket was discretionary. See id. at 38 ("County and city councils have legislative discretion in deciding to amend or not amend their comprehensive plans."). The GMHB cannot offer relief for a discretionary decision and properly dismissed the action. See id. ("neither the board nor a court can grant relief (that is, order a legislative discretionary act)").

We affirm.

_Chun, J._

WE CONCUR:

_Coburn, J._     _Bowman, J_