[No. 33750-9-II.   Division Two.   October 17, 2006.]

ALVIN ALEXANDERSON ET AL., *Appellants*, v. THE CLARK COUNTY BOARD OF COMMISSIONERS ET AL., *Respondents*.

542

*Patrick W. Ryan* and *Eric S. Merrifield* (of *Perkins Coie, L.L.P.*), for appellants.

*Arthur D. Curtis, Prosecuting Attorney for Clark County*, and *Richard S. Lowry, Deputy*; and *Robert M. McKenna, Attorney General*, and *Martha P. Lantz, Assistant*, for respondents.

¶1 PENOYAR, J. — Alvin Alexanderson et al. appeal the Growth Management Hearings Board's (Board) decision that the Board lacked subject matter jurisdiction over its petition. Alexanderson et al. petitioned to the Board because they opposed Clark County's consent to a Memorandum of Understanding (MOU) agreement between the County and the Cowlitz Indian Tribe (Tribe). The Board has subject matter jurisdiction over petitions concerning whether a comprehensive plan, development regulation, or an amendment to either violates the Growth Management Act (GMA), chapter 36.70A RCW. *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 178, 4 P.3d 123 (2000). Since the MOU acts as a de facto amendment to the County's comprehensive plan, we hold that the Board had jurisdiction to hear the petition. We reverse and remand to the Board.

## FACTS

### I. THE TRIBE'S APPLICATION FOR TRUST STATUS

¶2 In 2002, the Tribe applied to the Bureau of Indian Affairs (BIA) at the United States Department of the Interior, requesting that the BIA hold approximately 151.87 acres of Clark County land (the subject land) in trust status

for the Tribe. At the time of this appeal, the Tribe's application was still pending.

¶3 The subject land is designated on the County's comprehensive land use plan as agricultural and industrial urban reserve land and is zoned for a minimum lot size of 20 acres. If the Tribe's application is approved by the BIA, the Tribe has indicated it intends to use the subject land for commercial gaming purposes, which would be inconsistent with the current land use designation. In connection with the Tribe's application, the County wrote to the BIA, explaining that if the Tribe used the proposed land for commercial development or any use other than agricultural use, the Tribe's development would present significant challenges for local governments.

II. THE MEMORANDUM OF UNDERSTANDING

¶4 In response to the Tribe's pending application for trust status, the Tribe and the County entered into a MOU, which stated:

> The cornerstone of [the MOU] is that the County and the Tribe *are entering into an enforceable Agreement to comprehensively mitigate impacts of this acquisition as developed*, including, but not limited to: be consistent with attached county ordinances; mitigating environmental impact of its uses of trust land; paying development and other processing fees; be consistent with building and design standards set out in County ordinances; compensate the county law enforcement[,] prosecuting attorney, courts and schools and fire district[,] and others who provide public services on the Tribe's trust lands.

Administrative R. (AR) at 354 (emphasis added). If designated as trust land, the subject land would be held in trust for the benefit of the Tribe and would enjoy sovereign immunity from state regulations. Therefore, the MOU was the County's attempt to hold the Tribe accountable to certain state regulations.

¶5 The MOU outlined the process in which the County would provide services to the Tribe if the BIA approved the Tribe's application. Under the MOU, the County agreed to

extend water supply through the existing Clark Public Utilities system to the subject land. The County and the Tribe also agreed that the subject land and any structures or uses of the land would be developed in a manner consistent with the county codes that apply at the time of development. Further, the Tribe agreed it would act in a manner consistent with certain applicable state laws and county ordinances. The parties agreed that the MOU was contingent on the BIA accepting the Tribe's trust application and would not become effective until the BIA approved it. The MOU stated:

> This MOU is being executed as of the date shown hereon, but it is specifically agreed that this MOU shall not become effective and enforceable until the date on which the United States Secretary of the Interior accepts the Clark County Site in trust for the Cowlitz Indian Tribe. The acceptance of the Clark County Site into trust for the Tribe is an express condition precedent to this MOU becoming final.

AR at 362. All parties agree that the Tribe's projected use of the subject land would violate the comprehensive plan and the County's development regulations.

¶6 On March 2, 2004, the County Board of Commissioners approved the MOU, stating, however, that it did not intend to support the Tribe's trust application through its approval. It stated that:

> [The Board of Commissioners] has concerns that the trust application, if federally-approved, would permit uses on this rural and resource land which otherwise would not be allowed under the County's comprehensive land use plan, would permit gaming, which is otherwise prohibited in unincorporated Clark County, and could potentially adversely affect existing business.

AR at 2495 (citing Resolution 2004-03-02, § 2: Disclaimer. (Ex. 423)).

III. PROCEDURAL FACTS

¶7 Alvin Alexanderson is a resident of the County and resides on a five-acre parcel of land within sight of the

subject land. When he acquired his home, he relied on the rural and agricultural character of the area as specified in the comprehensive plan and the zoning regulations. He understood that urban development and commercial uses of the subject land were not permitted under the comprehensive plan. Alexanderson opposed any use of the subject land that would be inconsistent with the current agricultural character of the land. He submitted written and oral comments to the County, stating his opposition to the Board of Commissioner's approval of the MOU and arguing that the Board of Commissioners should not approve the MOU.

¶8 Dragonslayer, Inc., and Michels Development, L.L.C., are businesses operating in LaCenter, Washington, close to the subject land. They also submitted comments to the Board of Commissioners, stating their opposition to the approval of the MOU. They opposed the Tribe's proposed development because they believed it would cause decay and blight in LaCenter by taking customers away from local businesses.

¶9 On June 2, 2004, Alexanderson, Dragonslayer, and Michels filed a petition with the Board opposing the MOU. They argued that the County violated the environmental review and planning requirements of the GMA and the State Environmental Policy Act (SEPA), chapter 43.21C RCW, by entering into and approving the MOU, which authorized development on the subject land in violation of the County's comprehensive plan.

¶10 The Board dismissed the petition. It concluded that it lacked subject matter jurisdiction to hear the petition because it found that the MOU is not a development regulation, comprehensive plan, or an amendment to either. It reasoned that the MOU is an agreement between the parties outlining how the Tribe will work with the County if the subject land is placed in trust status.

¶11 Alexanderson et al. appealed the Board's decision to superior court, arguing that the Board erred in determining that it lacked subject matter jurisdiction over their petition.

They also presented substantive arguments to the court, arguing that the Board of Commissioners and the County violated SEPA and the GMA, that the MOU was invalid and unenforceable, that the MOU was an unconstitutional expenditure of public funds, and that the MOU was an unlawful and ultra vires forfeiture of the County's police power.

¶12 The court affirmed. It agreed that the Board did not have subject matter jurisdiction to hear arguments concerning the MOU. It stated that, *"The [MOU] neither amends the comprehensive plan or development regulations despite its conflict with provisions of those land use laws."* Clerk's Papers (CP) at 1981 (emphasis added). The court noted that it was not reaching the merits of the substantive arguments raised by Alexanderson et al. and stated that serious legal questions existed regarding whether the MOU is valid, whether the MOU authorized actions that violated the County's land use regulations, and whether the County and commissioner's approval of the MOU without an environmental review violated SEPA. The court also found that venue was improper and the parties stipulated to transferring venue for the remaining substantive claims.

¶13 In this appeal, Alexanderson et al. appeals only the court's ruling that the Board did not have subject matter jurisdiction over the MOU.

## ANALYSIS

I. Standard of Review

¶14 We review Board decisions under the Administrative Procedure Act, chapter 34.05 RCW, which requires us to review the record created before the Board, not the record created before the superior court. *Buechel v. Dep't of Ecology*, 125 Wn.2d 196, 202, 884 P.2d 910 (1994). We review the Board's legal conclusions de novo, giving substantial weight to the Board's interpretation of the statute it administers. *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 136 Wn.2d 38, 46, 959 P.2d

1091 (1998). The burden of demonstrating the invalidity of the Board's action is on the party asserting invalidity; here, the burden is on Alexanderson et al. RCW 34.05.570(1)(a).

II. JURISDICTION OF GROWTH MANAGEMENT HEARINGS BOARD

■ ■ ¶15 Growth management hearings boards are charged with adjudicating compliance with the GMA and invalidating noncompliant development regulations and comprehensive plans. *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543, 552, 14 P.3d 133 (2000) (citing RCW 36.70A.280, .302). Boards shall hear and determine only those petitions alleging:

> That a state agency, county, or city planning under this chapter is not in compliance with the requirements of this chapter, chapter 90.58 RCW as it relates to the adoption of shoreline master programs or amendments thereto, or chapter 43.21C RCW *as it relates to plans, development regulations, or amendments*, adopted under RCW 36.70A.040 or chapter 90.58 RCW.

RCW 36.70A.280(1)(a) (emphasis added).

¶16 The GMA places limits on the Board's authority. *Skagit Surveyors & Eng'rs, L.L.C. v. Friends of Skagit County*, 135 Wn.2d 542, 565, 958 P.2d 962 (1998) (citing RCW 36.70A.280(1), .290). Unless a petition alleges that a comprehensive plan, a development regulation, or amendments to either violate the GMA, the Board does not have subject matter jurisdiction to hear the petition. *Wenatchee Sportsmen Ass'n*, 141 Wn.2d at 178.

¶17 In order for the Board to have jurisdiction over the petition, Alexanderson et al. must demonstrate that the MOU is a comprehensive plan or an amendment to a comprehensive plan, or that the MOU is a development regulation or an amendment to a development regulation.

A. De Facto Amendment to the Comprehensive Plan

■ ¶18 Alexanderson et al. contend that the MOU is a de facto amendment to the County's comprehensive plan because it requires the County to act inconsistently with

planning policies by providing water to the subject land. Because the MOU has the effect of amending the comprehensive plan, they ague that the Board had jurisdiction to hear its petition. We agree.

¶19 A comprehensive land use plan is "a generalized coordinated land use policy statement of the governing body of a county or city . . . ." RCW 36.70A.030(4). Goal 6.2.7 of the County's comprehensive plan states that the County is permitted to extend water services to rural areas *only if* service is provided at a level that will accommodate *only the type of land use* and development density called for in the [comprehensive plan]." CP at 947 (emphasis added). The County's plan designates the subject land as agricultural resource land and industrial urban reserve land. Both parties agree that the Tribe's projected use of the subject land is inconsistent with the use the comprehensive plan permits. Yet, in Section 9.3 of the MOU, the County agreed to supply water to the subject land if the Tribe's trust status application is approved. Section 9.3 of the MOU states that the Tribe will provide water supply either through connection to an existing Clark County Public Utilities system or by development of a new independent water supply system.

¶20 Although the language of Section 9.3 does not explicitly amend Goal 6.2.7 of the County's comprehensive plan, it has the actual effect of doing so. In the MOU, the County agreed to provide water to the subject land. In the comprehensive plan, the County agreed not to provide water at a level inconsistent with the comprehensive plan. The Tribe proposes to use the land in a manner inconsistent with the current land use designation for the subject land. Section 9.3 of the MOU and Goal 6.2.7 of the comprehensive plan are inconsistent. The MOU, in effect, supersedes and amends the comprehensive plan.

¶21 If the Tribe's application to the BIA is approved, and the subject land is designated in trust, the land will be exempt from all state regulations under the GMA, except as far as the Tribe has consented to in the MOU. Upon

approval of the trust application, the MOU will govern. Because the MOU explicitly supplies water in violation of the comprehensive plan, the MOU is a de facto amendment to the comprehensive plan. To hold that the comprehensive plan has not been amended, where what was previously forbidden is now allowed, is to exalt form over function.

¶22 Although it may have been reasonable for the County to attempt to hold the Tribe accountable to at least some regulations and ordinances through the MOU, the question here is whether the Board had jurisdiction to hear Alexanderson et al.'s petition, not whether the County's actions were reasonable. Because the MOU has the legal effect of amending the plan, just as if the words of the plan itself had been changed to mirror the MOU, the MOU was a de facto amendment and the Board has jurisdiction.

¶23 In *City of Burien v. Central Puget Sound Growth Management Hearings Board,* 113 Wn. App. 375, 53 P.3d 1028 (2002), we held that a challenge to a development agreement is not within the Board's jurisdiction, but a challenge to the process by which portions of an agreement actually became amendments to the comprehensive plan was within the Board's jurisdiction. Here, Section 9.3 of the MOU directly conflicts with the comprehensive plan and will override Goal 6.2.7 of the comprehensive plan if the Tribe's trust application is approved. The MOU is not a development agreement. We hold that the MOU is a de facto amendment to the comprehensive plan within the Board's jurisdiction and not a development agreement outside the Board's jurisdiction.

B. Development Regulation or Amendment to a Development Regulation

¶24 Alexanderson et al. assert that the MOU is an official control over the Tribe's development and a development regulation. Because we hold that the MOU is a de facto amendment to the comprehensive plan, we need not reach this issue and therefore decline to address whether the MOU is a development regulation or amendment.

¶25 We reverse the Board's decision that it lacked subject matter jurisdiction and remand to the Board for further proceedings.

ARMSTRONG and QUINN-BRINTNALL, JJ., concur.

Reconsideration denied November 20, 2006.