# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| IAN MUNCE, | No. 57940-5-II |
| Appellant, | |
| v. | |
| CITY OF ANACORTES and GROWTH MANAGEMENT HEARINGS BOARD, | UNPUBLISHED OPINION |
| Respondents. | |

GLASGOW, C.J. — Ian Munce's neighbors owned a field near a wetland in the City of Anacortes. The City had a critical areas ordinance that governed development and other activities around wetlands, and the ordinance generally prohibited mowing near wetlands. In 2021, the City determined that the neighbors had a prior nonconforming use exempting them from the ordinance and allowing them to mow their field.

Later in 2021, the City updated its critical areas ordinance. In 2022, Munce complained to the mayor about his neighbors' continued mowing of the field, arguing that the mowing violated the new ordinance. The mayor sent Munce an e-mail explaining that the neighbors had a prior nonconforming use that could not be revoked unless the neighbors stopped mowing for at least one year or they exceeded the scope of their nonconforming use.

Munce petitioned the Western Washington Growth Management Hearings Board for review of the mayor's e-mail. The Board concluded that the e-mail was not within the Board's

jurisdiction to review because it was not a comprehensive plan, development regulation, or de facto amendment thereto. The Board dismissed Munce's petition.

Munce appeals. He argues that the Board had jurisdiction to review the e-mail as a de facto amendment to the comprehensive plan and critical areas ordinance because it required the City to act inconsistently with those regulations. He also contends that the Board erred by not analyzing whether the e-mail had the actual effect of requiring the City to act inconsistently with its planning.

We affirm.

FACTS

In early 2021, Munce's neighbors mowed their field, which was near a wetland. In June 2021, the City determined that the mowing was a legal nonconforming use under the critical areas ordinance after the neighbors submitted records showing that the area had been mowed before 1990.

In 2022, Munce e-mailed the City's mayor to complain about his neighbors continuing to mow their field. He asserted that the mowing violated the new critical areas ordinance. The mayor responded by e-mail that the City had previously determined that the mowing was a legal nonconforming use. And under the new critical areas ordinance, "as long as the [neighbors] don't abandon mowing for a period of a year or more, their use will continue to be allowed." Clerk's Papers (CP) at 6. He explained that the "determination of legal nonconforming use was made nearly a year ago, was not challenged, and now requires the City to allow the [neighbors'] activity as long as it complies with Chapter 19.49," the municipal code chapter governing nonconforming uses, "and other provisions of the" municipal code. *Id*.

In June 2022, Munce petitioned the Board to review the mayor's e-mail, arguing that the e-mail was a "collateral attack and de facto amendment" to the critical areas ordinance that violated the Growth Management Act (GMA), chapter 36.70A RCW, and the State Environmental Policy Act, chapter 43.21C RCW. CP at 3.

The Board dismissed Munce's petition without a hearing on the merits. The Board reasoned that it had jurisdiction to review challenges to only comprehensive plans, development regulations, and amendments to those plans and regulations. An administrative interpretation could constitute a de facto amendment to a development regulation if the interpretation was legally binding and required the City to take actions inconsistent with its regulations.

The Board reasoned that "[a]t best, the correspondence between Petitioner and the city official amount[ed] to an administrative interpretation." CP at 12. But the "interpretation described in [the mayor's e-mail was] unlike those determined to be comprehensive plan amendments in other cases." CP at 13. The Board explained that the e-mail was "not an enforceable agreement or action with an actual effect requiring inconsistent action; nor [was] it a unilateral action making a subsequent legislative result inevitable." *Id.* Therefore, the e-mail was not a de facto amendment to the comprehensive plan or critical areas ordinance that the Board had jurisdiction to review. The Board thus dismissed Munce's petition, concluding that it did not have jurisdiction to decide his claims.

Munce petitioned for judicial review of the Board's order and the trial court directly transferred his appeal to this court.

3

ANALYSIS

I.      NONCONFORMING USES UNDER THE ANACORTES ORDINANCE

The Anacortes Municipal Code provides that any "use of land, legally permitted or established, must be permitted to continue" as long as it complies with applicable requirements. ANACORTES MUNICIPAL CODE (AMC) 19.49.020(A). In July 2021, the City updated its critical areas ordinance, which regulates development and land uses in and around wetlands, geologic hazards, and other sensitive areas. *See* Anacortes Ordinance 3064 (July 26, 2021). In part, the new ordinance provides that existing "uses that were established legally but do not meet the current critical area, buffer, or buffer setback requirements may continue," in accordance with activity-specific limitations. AMC 19.70.035(C).[1]

For yards and gardens, the new ordinance permits mowing and other maintenance to continue as long as the "activities are limited to legally existing landscaping improvements and do not further expand into critical areas or associated buffers, do not alter topography, do not destroy or clear native vegetation, do not remove non-hazard trees in the buffer or critical area, and do not diminish water quality or quantity." AMC 19.70.040(F), Table (A). Additionally, "[i]f an activity has ceased for one year or more any future use of such land, building or structure must thereafter be in conformity with this chapter and the zone in which it is located." *Id.*

---

[1] The Anacortes Municipal Code has been revised since Munce petitioned for the Board's review, but the relevant language has not changed, so we cite to the current provisions of the code.

## II.    BOARD JURISDICTION

Munce argues that the Board improperly interpreted the scope of its jurisdiction when it dismissed his petition. He reasons that the mayor's e-mail constituted a de facto amendment to the City's comprehensive plan and critical areas ordinance that was within the Board's jurisdiction to review. He contends that the new ordinance's prohibition on removing native vegetation from buffer zones should have effectively superseded the nonconforming use exemption, and that the mayor's refusal to revoke the exemption had the substantive effect of amending the ordinance. Thus, Munce asserts that the Board erroneously interpreted or applied the law when it ruled that the e-mail was outside its jurisdiction to review, and that the Board's ruling was not supported by substantial evidence.

The City responds that the mayor's e-mail was not within the Board's jurisdiction because it was not a legislative action or a de facto amendment to the City's comprehensive plan or development regulations. It asserts that the e-mail reciting the applicable provisions of the municipal code "did not require the City to act inconsistent with its comprehensive plan or development regulations." Br. of Resp't at 9. The City highlights that Munce could have appealed the original enforcement decision under the Land Use Petition Act (LUPA), chapter 36.70C RCW, which he did not do. And the mayor did "not have the legal authority to make changes to the City's code, comprehensive plan, or planning documents because state law and the Anacortes Municipal Code do not allow it." *Id*. We agree with the City that the e-mail was not within the Board's jurisdiction to review.

Chapter 34.05 RCW, the Administrative Procedure Act, governs judicial review of growth management board actions. *Whatcom County v. Hirst*, 186 Wn.2d 648, 666, 381 P.3d 1 (2016).

"The burden of demonstrating the invalidity of agency action is on the party asserting invalidity." RCW 34.05.570(1)(a). RCW 34.05.570(3) provides nine grounds for relief from a board's adjudicatory order. Relevant here, a court shall grant relief from a board's order if the court determines that a board "has erroneously interpreted or applied the law," or the order "is not supported by evidence that is substantial when viewed in light of the whole record." RCW 34.05.570(3)(d)-(e). Courts review alleged misinterpretations of the law de novo. *Kittitas County. v. E. Wash. Growth Mgmt. Hr'gs Bd.*, 172 Wn.2d 144, 155, 256 P.3d 1193 (2011). For allegations that a board's order is not supported by substantial evidence, we determine whether there is "'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" *Thurston County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 164 Wn.2d 329, 341, 190 P.3d 38 (2008) (internal quotation marks omitted) (quoting *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 136 Wn.2d 38, 46, 959 P.2d 1091 (1998)).

A.    Principles Governing Board Jurisdiction

In relevant part, the GMA provides that boards have subject matter jurisdiction over petitions alleging that a "city planning under [the GMA] is not in compliance with the requirements of" the GMA or the State Environmental Policy Act. RCW 36.70A.280(1)(a);[2] *see* WAC 242-03-025(1).

The GMA "is not to be liberally construed." *Thurston County*, 164 Wn.2d at 342. Boards have jurisdiction to review *only* comprehensive plans, development regulations, and other legislative actions. *Stafne v. Snohomish County*, 174 Wn.2d 24, 32, 271 P.3d 868 (2012). In other

---

[2] The provisions of the GMA have been updated since Munce petitioned for the Board's review, but the relevant language has not changed, so we cite to the current provisions of the GMA.

words, "[u]nless a petition alleges that a comprehensive plan, a development regulation, or amendments to either violate the GMA, the Board does not have subject matter jurisdiction to hear the petition." *Alexanderson v. Bd. of Clark County Comm'rs*, 135 Wn. App. 541, 548, 144 P.3d 1219 (2006).

A board's jurisdiction also includes de facto amendments to a comprehensive plan that require a county or city to act inconsistently with its planning policies. *Id*. at 548-49. And the Board has concluded that a county or city's administrative interpretations are de facto amendments subject to board review if the interpretations "are actually comprehensive plan amendments that should comport with the approved [local] processes for such amendments." *Skagit County Growthwatch v. Skagit County*, No. 04-2-0004, at 4 (W. Wash. Growth Mgmt. Hr'gs Bd. Aug. 23, 2004).[3]

Certain principles control whether a jurisdiction's action is a de facto amendment to its regulations. A board will consider whether "[t]he explicit language" of the action is dispositive; "the actual, legal effect of the action;" and whether "the actual legal effect must require a particular legislative result." *BD Lawson Partners LP and BD Village Partners LP v. City of Black Diamond*, No. 14-3-0007, at 6 (Cent. Puget Sound Growth Mgmt. Hr'gs Bd. Aug. 18, 2014) (boldface omitted).[4]

In *Alexanderson*, Clark County and an Indian tribe approved a memorandum of understanding about the tribe's application to use land zoned for agriculture and industry for

---

[3] https://eluho2022.my.site.com/casemanager/s/eluho-document/a0T82000000KS2aEAG/skagit-county-growthwatch-v-skagit-county-et-al-final-decision-and-order.

[4] https://eluho2022.my.site.com/casemanager/s/eluho-document/a0T82000000HGTlEAO/order-of-dismissal.

commercial gaming purposes. 135 Wn. App. at 544-45. This use would have violated the county's comprehensive plan and development regulations because it required extending water utilities to the land, which all parties agreed violated the comprehensive plan. *Id.* Neighbors of the subject land petitioned the Board for review, alleging violations of the GMA. *Id.* at 546. The Board dismissed the petition, concluding that it lacked subject matter jurisdiction. *Id.* This court reversed, holding that the Board had jurisdiction to review the petition because the memorandum directly conflicted with the comprehensive plan and therefore had "the legal effect of amending the [comprehensive] plan, just as if the words of the plan itself had been changed." *Id.* at 550. Thus, the memorandum was a de facto amendment within the Board's jurisdiction to review. *Id.*

In contrast, a board does not have jurisdiction to hear challenges to a "site-specific rezon[ing]" authorized by a comprehensive plan, a comprehensive plan's effect on specific land use decisions, or "individual agreements between cities and property owners regarding the development, use, and mitigation of the development of a specific piece of property." *Woods v. Kittitas County*, 162 Wn.2d 597, 613, 174 P.3d 25 (2007); *Citizens for Mount Vernon v. City of Mount Vernon*, 133 Wn.2d 861, 868, 947 P.2d 1208 (1997); *City of Burien v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 113 Wn. App. 375, 386 n.11, 53 P.3d 1028 (2002). Site-specific land use decisions authorized by a comprehensive plan do not themselves qualify as comprehensive plans or development regulations, so they are subject to review only in superior court under LUPA. *Woods*, 162 Wn.2d at 610; RCW 36.70C.030(1). In sum, a site-specific land use decision that is consistent with the comprehensive plan cannot be a de facto amendment to the plan.

B.        Whether the Board Had Jurisdiction to Review the Mayor's E-mail

Here, the general provisions of the City's municipal code provided that a prior nonconforming use could continue as long as it was not halted for more than one year. AMC 19.49.020(A), .050(B). The critical areas ordinance stated, "Existing structures, activities, and uses that were established legally but do not meet the current critical area, buffer, or buffer setback requirements may continue." AMC 19.70.035(C). Specifically mowing, as well as maintenance of yards and gardens, could continue as long as the activity was not halted for more than one year and did not "further expand into critical areas" or buffers, alter topography, clear native vegetation, remove non-hazard trees, or "diminish water quality or quantity." AMC 19.70.040(F), Table (A).

The mayor's e-mail explained the City had previously determined that Munce's neighbors' mowing was a legal nonconforming use that the City could not "arbitrarily change." CP at 6. It then explained that the nonconforming use determination was made a year before Munce's e-mail, "was not challenged," and required the City to allow the neighbors' mowing as long as they complied with the provisions of the municipal code governing nonconforming uses near critical areas. CP at 6. The e-mail was clearly not a comprehensive plan or development regulation by itself. Thus, to fall within the Board's jurisdiction, it needed to meet the threshold for being a de facto amendment to a plan or regulation.

The Board concluded that the e-mail was most similar to "an administrative interpretation." CP at 12. But even an administrative interpretation is only within the Board's jurisdiction if it amounts to a comprehensive plan amendment. *Skagit County Growthwatch*, No. 04-2-0004, at 4. "The explicit language" of the action must be dispositive; there must be an "actual, legal effect of

the action;" and "the actual legal effect must require a particular legislative result." *BD Lawson Partners LP*, No. 14-3-0007, at 6.

Here, the e-mail recited the outcome of a prior City land use decision under a prior critical areas ordinance and declined to revisit that decision when there was no basis to do so under the applicable provisions of the municipal code. The prior 2021 determination that the neighbors had a nonconforming use to mow their lawn could have been appealed under LUPA. An e-mail merely restating that prior determination was not a dispositive action constituting a de facto amendment to the comprehensive plan or critical areas ordinance. The e-mail also was not an administrative interpretation within the Board's purview because the e-mail had no new independent legal effect, and certainly not one that required a particular legislative result. Munce has not shown that the e-mail had the effect of a legislative action or required a result that conflicted with the City's comprehensive plan or development regulations.

Munce further argues that the Board erred by not analyzing whether the mayor's decision had the actual effect of requiring the City to act inconsistently with its comprehensive plan. But determining the validity of the mayor's action was beyond the Board's jurisdiction. *See Woods*, 162 Wn.2d at 610. The Board analyzed whether Munce's petition met any of the criteria that would establish Board jurisdiction and found the petition lacking. This included determining whether the e-mail constituted an administrative interpretation, "an enforceable agreement or action with an actual effect requiring inconsistent action," or "a unilateral action making a subsequent legislative result inevitable." CP at 13. The Board concluded that the e-mail was more similar to an administrative interpretation than the other possibilities but, nevertheless, did not meet the criteria

of having an actual legal effect that would render it subject to board review. Munce does not show that this was an error or that more was required.

Under these circumstances, the mayor's explanation that he could not revoke a prior nonconforming use exemption was not a de facto amendment to the critical areas ordinance or comprehensive plan. Thus, the Board did not erroneously interpret or apply the law when it concluded that it lacked jurisdiction to hear Munce's petition, and its decision was supported by substantial evidence.

## CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, C.J.

We concur:

Maxa, J.

Lee, J.